ROBERT P. SMITH, Judge.
The principal issue on this appeal from a final judgment of marriage dissolution is whether the parties’ antenuptial agreement, executed just before their marriage in 1965, was properly invalidated by the chancellor on the ground that the husband, interposing the agreement in bar of alimony, did not disclose the nature and extent of his resources to his wife-to-be before she executed the agreement, nor did she otherwise have that knowledge. We interpret the chancellor’s order not as allocating the burden of proof, for which the order might be criticized, but as finding the facts on substantial competent evidence. The chancellor held the agreement valid but for the husband’s nondisclosure, and the parties here treat the terms of the agreement, if it is valid, as conclusive on the question of alimony.
The common law disclosure requirement enforced by the chancellor was eliminated for certain purposes, at least, by a 1974 amendment to Section 732.702, Florida Statutes (1979):
(2) Each spouse shall make a fair disclosure to the other of his or her estate if the agreement, contract, or waiver is executed after marriage. No disclosure shall be required for an agreement, contract, or waiver executed before marriage. (Emphasis added.)
The effect of this amendment was to eliminate those common law restrictions on “contractual arrangements relating to death,” Section 732.702(1), which were expressed by Del Vecchio v. Del Vecchio, 143 So.2d 17, 20 (Fla. 1962):
A valid antenuptial agreement contemplates a fair and reasonable provision therein for the wife, or, absent such provision, a full and frank disclosure to the wife, before the signing of the agreement, of the husband’s worth, or, absent such disclosure, a general and approximate knowledge by her of the prospective husband’s property ....
See also Posner v. Posner, 233 So.2d 381 (Fla.1970); and Roberts v. Roberts, 388 So.2d 216 (Fla.1980).
*303 The rule enforced here by the chancellor is but one version of common law principles which have long protected disadvantaged spouses from the effects of agreements entered hastily, in ignorance, and in contemplation of marriage. See Note, “Public Policy, the Courts, and Antenuptial Agreements Specifying Alimony,” 23 U.Fla.L. Rev. 113 (1970). The 1974 legislation does not in terms vitiate the Del Vecchio rule as it applies in marriage dissolutions or other proceedings between living spouses or former spouses, so to validate agreements barring alimony irrespective of whether the disadvantaged spouse was informed before signing of the other's financial resources. In that circumstance we do not by implication extend the statutory incursion upon the common law. Rather we agree with the District Court of Appeal, Third District, that the statutory dispensation of preagreement disclosure applies only in proceedings subject to the probate code. Topper v. Stewart, 388 So.2d 1270, 1271 (Fla.3d DCA 1980) (dictum). The chancellor’s judgment will therefore be affirmed.
Nevertheless, because by our ruling the same premarital agreement which in dissolution proceedings is invalid for nondisclosure may be held valid if not litigated until death, and because our adherence to common law precedent may be thought to encourage divorce rather than faithfulness in marriage unto death, we certify to the Supreme Court that we have passed on a question of great public importance, Article V, Section 3(b)(4), Florida Constitution, namely:
Does Section 732.702(2) validate premarital agreements otherwise invalid under Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla.1962), when the agreement is questioned on grounds of nondisclosure in a marriage dissolution or other proceedings affecting property during the lifetimes of the spouses?
AFFIRMED.
WENTWORTH, J., concurs.
MILLS, C. J., concurs in part and dissents in part, with opinion.